E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture and Recovery Section
RYAN WATERS (Cal. Bar No. 268015)
Assistant United States Attorney
Asset Forfeiture and Recovery Section
     1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-3111
     Facsimile: (213) 894-0142
     E-mail: Ryan.Waters@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>             v.<br><br>EIGHTY-SEVEN GOLD BARS AND COINS,<br><br>             Defendant. | No. 2:23-cv-02935<br><br>VERIFIED COMPLAINT FOR FORFEITURE<br><br>18 U.S.C. § 981(a)(1)(C)<br><br>[HSI] |

Plaintiff United States of America brings this claim against defendant Eighty-Seven Gold Bars and Coins, and alleges as follows:

## JURISDICTION AND VENUE

1.   The government brings this *in rem* civil forfeiture action pursuant to 18 U.S.C. § 981(a)(1)(C).

2.   This Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 1345 and 1355.

3.   Venue lies in this district pursuant to 28 U.S.C. § 1395.

## PERSONS AND ENTITIES

4.   The plaintiff in this action is the United States of America.

5.   The defendant is Eighty-Seven Gold Bars and Coins (the "defendant asset") seized during the execution of a federal search warrant executed on July 21, 2022, at a Tarzana, California residence associated with Robert Aslanyan ("Aslanyan").

6.   The defendant asset is currently in the custody of U.S. Customs and Border Protection ("CBP") in this District, where it shall remain subject to this Court's jurisdiction during the pendency of this action.

7.   The interests of Aslanyan, Karen Sargsyan ("Sargsyan"), Bank of America, Capital One, American Express, USAA, Discover, Chase, Synchrony, PenFed Credit Union, and Golden 1 Credit Union may be adversely affected by these proceedings.

## FACTS SUPPORTING FORFEITURE

### Background on Initial Unemployment Insurance Fraud Investigation

8.   Beginning around the summer of 2022, Homeland Security Investigations ("HSI") learned of an unemployment insurance fraud scheme. Between June 2020 and continuing through March 2021, Aslanyan and an associate perpetuated a scheme to fraudulently obtain unemployment insurance benefits from the

State of California. At least sixty-three Bank of America Employment Development Department ("EDD") debit cards in other peoples' names were used to withdraw cash from ATMs. A review of EDD and Bank of America records revealed that Aslanyan and his associate had access to at least $1,504,720 of other claimants' unemployment insurance benefits. Review of the Bank of America debit card transactions revealed that Aslanyan and his associate withdrew at least $673,440.

9. On July 21, 2022, a search warrant was executed at a Tarzana, California residence associated with Aslanyan. Among items seized during the search for evidence was the defendant asset.

Background on Emergence of "Bust-Out" Fraud Scheme Investigation

10. On or about September 2, 2002, Sargsyan provided receipts to HSI claiming to show he is the true owner of the defendant asset. Sargsyan stated that he purchased the defendant asset and subsequently kept those gold bars and coins at Aslanyan's residence until they were seized. The receipts indicate that between June 29th and July 14th, 2022, Sargsyan purchased approximately seventy-seven gold bars and coins from Liberty Coin, which sells valuable coins and metals to collectors and investors at its retail locations, its website at www.libertycoin.com, and other online sales platforms, such as eBay. The receipts indicate that a Karen Sargsyan, buyer "kjanks99" on eBay, was billed for these purchases, paid for them via PayPal, and had the items sent to his address on Goodland Avenue in North Hollywood, California. The email provided to Liberty Coin was karensargsyan2213@gmail.com.

11. While a review of the provided receipts revealed them to be genuine, it also revealed that the purchases of the gold bars and coins were the product of a "bust-out" fraud scheme involving credit cards in the name of Sargsyan from multiple financial institutions.  A "bust-out" fraud scheme typically follows a general framework that starts when a consumer applies for and uses credit under his or her own name, or uses a synthetic identity, to make transactions.  The suspect makes on-time payments to maintain a good account standing, with the intent of bouncing a final payment and abandoning the account. The suspect builds up a history of good behavior with timely payments and low utilization.  Over time, the suspect obtains additional lines of credit and higher credit limits. Eventually, the fraudster uses all available credit and stops making payments.  Overpayments with bad checks are often made in the final stage of the bust-out, temporarily inflating the credit limit and causing losses greater than the account credit limit.

12. The HSI investigation into this bust-out scheme began after receiving the gold bars and coins receipts and discovering that Sargsyan, residing in North Hollywood, California, engaged in remitting false payments to permit him to make purchases in excess of the limit placed on his credit cards. To make purchases over his credit limit, Sargsyan would pay his credit card balance using payments that did not clear. At least two such payments totaling more than $100,000 were from a Wells Fargo bank account for which Sargsyan was never an authorized signator.

13. Wells Fargo confirmed that the payments made from the bank account to Sargsyan's credit cards were unauthorized, and Wells Fargo, therefore, considered these payments fraudulent. Before Wells Fargo realized that the payments were unauthorized, the credit card balance would appear to be paid, thus allowing Sargsyan to make purchases on the credit card even though his credit card payments were fraudulent and unauthorized. As described below, Sargsyan repeated this pattern of submitting fraudulent payments with multiple credit cards. This allowed him to purchase the gold bars and coins and left the credit cards with financial losses after the payments did not clear. Alternatively, with some implicated credit accounts Sargsyan did not exceed the credit limit but simply never paid the balance due amount.

<u>Credit Cards Used in Bust-Out Scheme to Purchase Gold Bars and Coins</u>

14. The following credit cards controlled by Sargsyan were busted-out during the same approximate timeframe and used to purchase gold bars and coins:

a. American Express account number ending in 2005 ("AE 2005") received two payments, totaling $202,605.86, drawn from a Wells Fargo account between on or about July 8 and July 15 of 2022. The two Wells Fargo payments did not clear after they were determined to be fraudulent and unauthorized. The payments falsely inflated the credit balance on the card, permitting charges above the card credit limit of $5,100. American Express suffered approximately $109,000 in losses on AE 2005.

   b. American Express account number ending in 1009 ("AE 1009") did not receive any payments that were returned. However, in July of 2022, the same month of the intentionally synched false payments and large charges on other cards involved in the bust-out scheme, charges were made up to the credit limit of $1,500. No payments were made on these charges. American Express suffered approximately $1,500 in losses on AE 1009.

   c. USAA account number ending in 5718 ("USAA 5718") received one payment, totaling $4,384.95, on or about August 2, 2022, that did not clear and was returned. This payment was immediately returned within 3 days and did not exceed the card limit of $5,000. However, no legitimate payments more than $50 followed the fraudulent payment so that USAA suffered approximately $4,000 in losses on USAA 5718.

   d. Chase account number ending in 5047 ("Chase 5047") received two payments, totaling $81,814.70, between on or about July 18 and 26 of 2022, that did not clear and were returned. The payments falsely inflated the credit balance on the card, permitting charges above the card limit of $37,000. Chase suffered approximately $85,000 in losses on Chase 5047.

   e. Bank of America account number ending in 9597 ("BofA 9597") received two payments, totaling $43,150.58, between on or about July 17 and 18 of 2022, that did not clear and were returned. The payments falsely inflated the credit balance on the card, permitting charges above the card limit of $21,800. Bank of America suffered approximately $23,000 in losses on BofA 9597.

f. Bank of America account number ending in 0579 ("BofA 0579") did not receive any payments that were returned. However, in July of 2022, the same month of the intentionally synched false payments and large charges on other cards involved in the bust-out scheme, charges were made up to the credit limit of $13,000. No payments were made on these charges. Bank of America suffered approximately $13,000 in losses on BofA 0579.

g. Discover account number ending in 9941 ("Discover 9941") received two payments, totaling $9,595.80, between on or about July 17 and 18 of 2022, that did not clear and were returned. The payments falsely inflated the credit balance on the card, permitting charges above the card limit of $10,000. Discover suffered approximately $14,000 in losses on Discover 9941.

h. Discover account number ending in 1013 ("Discover 1013") received three payments, totaling $37,232.80 between on or about July 18 and 26 of 2022, that did not clear and were returned. The payments falsely inflated the credit balance on the card, permitting charges above the card limit of $9,000. Discover suffered approximately $17,000 in losses on the Discover 1013.

i. PenFed Credit Union account number ending in 9700 ("PenFed 9700") received two payments, totaling $19,000 between on or about August 23 and September 90 of 2022, that did not clear and were returned. These payments were immediately returned and did not affect the card limit of $7,500. However, no legitimate payments followed the fraudulent payments so that

PenFed Credit Union suffered approximately $7,000 in losses on PenFed 9700.

j. Capital One account number ending in 6180 ("CO 6180") received one payment, totaling $20,000, on or about July 15, 2022, that did not clear and was returned. While no charge exceeded the credit limit, this payment exceeded the card limit of $10,000. No legitimate payments followed the fraudulent payment so that Capital One suffered approximately $10,000 in losses on CO 6180.

k. Bank of America account number ending in 7411 ("BofA 7411") received two payments, totaling $34,915.50, between on or about July 17, 2022, and July 18, 2002, that did not clear and were returned. While no charge exceeded the credit limit, these payments exceeded the card limit of $18,000. No legitimate payments followed the fraudulent payments so that Bank America suffered approximately $18,000 in losses on BofA 7411.

l. Synchrony account number ending in 1892 ("Synchrony 1892") received two payments, totaling $34,591.01, between on or about September 19, 2022, and September 29, 2022, that did not clear and were returned. The payments falsely inflated the credit balance on the card, permitting charges above the card limit of $18,000. Additionally, because the fraud had yet to have been discovered, Synchrony issued a refund check to Sargsyan, dated August 29, 2022, in the amount of $16,404.73. Synchrony suffered approximately $56,000 in losses on Synchrony 1892.

m. Synchrony account number ending in 5088 ("Synchrony 5088") received three payments, totaling $23,878.94, between on or about July 19, 2022, and September 20, 2022, that did not clear and were returned. The payments falsely inflated the credit balance on the card, permitting charges above the card limit of $9,000. Synchrony suffered approximately $17,000 in losses on Synchrony 5088.

n. Golden 1 Credit Union account number ending in 5766 ("G1 5766") received two payments, totaling $59,321.00, between on or about August 2, 2022, and August 22, 2022, that did not clear and were returned. The payments falsely inflated the credit balance on the card, permitting charges above the card limit of $20,000. Golden1 Credit Union suffered approximately $38,000 in losses on the G1 5766.

o. The fraudulent payments and charges almost all occurred over an approximate two-month span so that they occurred quickly prior to the financial institutions recognizing the unauthorized payments and fraudulent scheme. The combined total loss to the financial institutions due to the scheme is at least more than $400,000.

Bust-Out Scheme Used to Purchase the Defendant Gold Items

18. The receipts provided by Sargsyan contain seventy-two gold items that were seized and are part of the defendant asset (i.e., eighty-seven gold items).[1] All seventy-two of these gold

---

[1] The provided receipts contain seventy-seven gold bars and coins. However, in an interview of Sargsyan conducted by the investigating federal agents, Sargsyan acknowledged that five of the gold items itemized in the receipts were not seized.

items can be traced to credit cards that were busted out and match the description of seized gold items. Sargsyan provided no evidence of a legitimate purchase for the remaining fifteen out of the eighty-seven seized gold bars and coins that were not in the invoices he provided.

19. According to review of PayPal and credit card records, at least seventy-two items from the defendant asset (i.e., eighty-seven items) were purchased with the busted-out credit cards detailed above, as follows:

June 29, 2022:
  a. 10-gram Gold Bar - PAMP Suisse - Fortuna 999.9 Fine purchased for $627.30 by Synchrony 1892 (Quantity 1)
  b. 1 oz. Gold Bar - PAMP Suisse - Fortuna 999.9 Fine purchased for $15,399.44 by Synchrony 1892 (Quantity 8)
  c. 1 oz. Gold Bar - PAMP Suisse - Fortuna 999.9 Fine purchased for $7,763.67 by Synchrony 5088 (Quantity 4)

July 2, 2022:
  a. 1 oz. Gold Bar - PAMP Suisse - Fortuna 999.9 Fine purchased for $1,924.15 by AE 2005 (Quantity 1)
  b. 10-gram Gold Bar - PAMP Suisse - Fortuna 999.9 Fine purchased for $685.21 by Discover 1013 (Quantity 1)
  c. 1 oz. Gold Bar - PAMP Suisse - Fortuna 999.9 Fine purchased for $9,660.70 by CO 6180 (Quantity 5)

July 4, 2022:
  a. 1 oz. Gold Bar - PAMP Suisse - Fortuna 999.9 Fine purchased for $7,683.00 by Discover 1013 (Quantity 4)
  b. 5-gram Gold Bar - PAMP Suisse - Fortuna 999.9 Fine

       purchased for $330.93 by Discover 1013 (Quantity 1)
   c. 1/2 oz. Gold Bar - PAMP Suisse Lady Fortuna Veriscan
       purchased for $1,163.67 by AE 1009 (Quantity 1)
   d. July 4, 2022: 1 oz. Gold Bar - PAMP Suisse - Fortuna
       999.9 Fine purchased for $9,595.80 by Discover 9941
       (Quantity 5)

July 7, 2022:

   a. 10 oz. Gold Bar - Random Brand - Secondary Market –
       999.9 Fine purchased for $18,346.29 by Chase 5047
       (Quantity 1)
   b. 50-gram Gold Bar - PAMP Suisse - Fortuna 999.9 Fine
       purchased for $8,991.27 by Chase 5047 (Quantity 3)
   c. 1 oz. Gold Bar - PAMP Suisse - Fortuna 999.9 Fine
       purchased for $3,762.44 by Chase 5047 (Quantity 2)
   d. 50-gram Gold Bar - Argor Heraeus - 999.9 Fine
       purchased for $8,987.23 by Chase 5047 (Quantity 3)
   e. 1 oz. Gold Bar - Valcambi Suisse 999.9 Fine purchased
       for $3,713.54 by USAA 5718 (Quantity 2)
   f. 10-gram Gold Bar - PAMP Suisse - Fortuna 999.9 Fine
       purchased for $670.56 by USAA 5718 (Quantity 1)
   g. 50-gram Gold Bar - Argor Heraeus - 999.9 Fine
       purchased for $2,978.76 by PenFed 9700 (Quantity 1)
   h. 20-gram Gold Bar - PAMP Suisse - Fortuna 999.9 Fine
       purchased for $1,217.82 by PenFed 9700 (Quantity 1)
   i. 10-gram Gold Bar - PAMP Suisse - Fortuna 999.9 Fine
       purchased for $612.19 by G1 5766 (Quantity 1)

   j. 1 oz. $50 American Gold Buffalo purchased for
$18,835.80 by G1 5766 (Quantity 10)[2]

July 12, 2022:

   a. 1 oz. Gold Bar - PAMP Suisse - Fortuna 999.9 Fine purchased for $1,909.17 by BofA 0579 (Quantity 1)

July 13, 2022:

   a. Kilo 32.15 oz. Gold Bar RCM Royal Canadian Mint .9999 Fine purchased for $58,049.17 by AE 2005 (Quantity 1)

   b. 1 oz. Gold Bar - PAMP Suisse - Fortuna 999.9 Fine purchased for $1,849.73 by AE 2005 (Quantity 1)

   c. 50-gram Gold Bar - PAMP Suisse - Fortuna 999.9 Fine purchased for $2,947.57 by AE 2005 (Quantity 1)

   d. 10 oz. Gold Bar - Credit Suisse - 999.9 Fine purchased for $18,077.87 by AE 2005 (Quantity 1)

   e. 100-gram Gold Bar - PAMP Suisse – Fortuna 999.9 Fine purchased for $17,639.01 by AE 2005 (Quantity 3)

July 14, 2022:

   a. 20-gram Gold Bar - PAMP Suisse - Fortuna 999.9 Fine purchased for $ 1,305.45 by BofA 7411 (Quantity 1)

   b. 1 oz. Gold Bar - PAMP Suisse - Fortuna 999.9 Fine purchased for $14,695.68 by BofA 7411 (Quantity 8)

   c. 100-gram Gold Bar - PAMP Suisse – Fortuna 999.9 Fine purchased for $17,582.73 by BofA 9597 (Quantity 3)

   d. 1 oz. Gold Bar - PAMP Suisse - Fortuna 999.9 Fine purchased for $1,869.91 by BofA 9597 (Quantity 1)

Sargsyan Interview with HSI

---

[2] Five of these ten gold items were the five items Sargsyan acknowledged were not seized.

20. On November 7, 2022, Sargsyan was Mirandized and interviewed by HSI regarding the seized defendant asset. Sargsyan first stated that the items in the provided invoices are his gold items but that a couple of the gold items seized are not his. However, Sargsyan later stated that all of the gold belongs to him.

21. Sargsyan stated he kept his gold in Aslanyan's residence because the gold was from a "project" he was attempting to keep secret because of a possible divorce. Sargsyan further stated that he did not feel secure keeping the gold at his house and does not have a place to hide it.

22. Sargsyan confirmed that he paid for the gold with his credit cards which were linked to his PayPal account. He did not mention any other avenue used to purchase gold other than credit cards. Sargsyan stated that he used seven to ten credit cards to purchase the gold and spent more than $200,000 on the gold.

23. Sargsyan claimed during the November 2022 interview that he was currently making payments of approximately $2,000 a month related to his credit cards. A review of statements for the credit cards involved in the bust-out scheme reveal that claim to be untrue. In addition to not making payments, at least one credit card issuer has stated that Sargsyan has refused all contact and that the accounts have been closed due to his fraudulent activity.

### FIRST CLAIM FOR RELIEF

24. Based on the above, plaintiff United States of America alleges that the defendant asset constitutes or is derived from proceeds traceable to violations of 18 U.S.C. § 1344 (bank

fraud), which is a "specified unlawful activity" as defined in 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1). The defendant asset is therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

WHEREFORE, plaintiff United States of America prays:

(a) that due process issue to enforce the forfeiture of the defendant asset;

(b) that due notice be given to all interested parties to appear and show cause why forfeiture should be not be decreed;

(c) that this Court decree forfeiture of the defendant asset to the United States of America for disposition according to law; and

(d) for such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated: April 19, 2023

E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture and Recovery Section

*/s/ Ryan Waters*
RYAN WATERS
Assistant United States Attorney
Asset Forfeiture and Recovery Section

Attorneys for Plaintiff
UNITED STATES OF AMERICA

VERIFICATION

I, Alfredo Rossi, hereby declare that:

1. I am a Special Agent with Homeland Security Investigations ("HSI").

2. I have read the above Verified Complaint for Forfeiture and know its contents. It is based upon my own personal knowledge and reports provided to me by other law enforcement agents.

3. Everything contained in the Complaint is true and correct, to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 13, 2023 in Los Angeles, California.

*Alfredo Rossi*
ALFREDO ROSSI
SPECIAL AGENT – HSI